*382 The opinion of the court (Wilde and Fletcher, Justices, not sitting,) was delivered at the March term, 1851.
Dewey, J.
We have given to the views presented by the plaintiffs’ counsel, that consideration which the importance of the principles involved, as well as the pecuniary interests affected thereby, seemed to require.
We find that the provision in the charter of the Boston and Lowell Railroad company, that the legislature may authorize other railroads to enter upon their road, is a general provision, not inserted therein in reference to any particular road which it was proposed to unite with it; that from the form of the provision in this, and in very many subsequent railroad charters, we understand it to have been a reservation of legislative power for the public benefit; that it was in the nature of a servitude imposed upon the company, but to be enjoyed or exercised by the proprietors of another railroad, only upon paying such compensation as the legislature should deem reasonable therefor; that the Andover and Wilmington railroad, when incorporated, was authorized thus to enter upon the Boston and Lowell road ; that this authority to the Andover and Wilmington railroad to enter emanated from the legislature, and not from the Boston and Lowell railroad corporation; that the legislature, having reserved the right to grant the privilege, had the power to exercise it in favor of the Andover and Wilmington railroad corporation, irrespective of the concurrence of the Boston and Lowell railroad corporation ; that until the power thus given to enter upon the road was exercised, it did not change the relations of the parties ; that it was a power to enter upon the track of the Boston and Lowell railroad, but did not necessarily require any outlay for new engines or cars ; that this was a matter to be arranged as the interest and convenience of the Boston and Lowell railroad corporation might require; and that it might be left to the Andover and Wilmington railroad corporation to use the mere naked right reserved to enter upon the track of the Boston and Lowell railroad, or to make an agreement providing for the use of the same, or for the carriage by the Boston and Lowell railroad of all passengers and freight they should bring.
*383 The details might embrace the time of the duration of such contract, as well as all other matters necessary to carry out a perfect system, so arranged as to secure fully the right of all parties to proper remuneration. Accustomed as we are now to the only safe and convenient mode of having the engines in use under the sole control of the company, whose road they pass over, we are apt to forget, that originally a different mode of using these roads was contemplated; and that to some extent on the earlier roads, the proprietors and the public had in view a use of them, in the manner much more extensively practised in Pennsylvania, by individuals travelling on them with their own vehicles.
We are further of opinion, that in incorporating the Andover and Wilmington railroad corporation, with the privilege thus to enter upon the Boston and Lowell railroad, although the Andover and Wilmington railroad was described as a “ branch,” that description did not, in any manner, change the relations of the parties, or affect their liabilities ; and that the right to use, or not to use the Boston and Lowell railroad, and to enter upon it, was not affected thereby. The Andover and Wilmington was a distinct corporation, in no way connected with the Boston and Lowell railroad corporation, and had an independent character as a road. Nor did the omission,* in the original charter of the Andover and Wilmington railroad company, to provide, as has been more usual in other charters, for the right of the legislature to authorize other roads to enter thereon, prevent the legislature, under the power they possessed to alter and amend the charter, from making such provision by a further act; the provisions of the act of 1831, in this respect, having been continued in force by the revised statutes. Still more clear would be the right, if done with the assent of the Andover and Wilmington railroad company. ’
We cannot adopt the views of the counsel for the plaintiffs, that this right to enter upon the Boston and Lowell railroad, reserved in the charter of the Boston and Lowell railroad company, when granted to the Andover and Wilmington rail *384 road company, was, as between these corporations, a permanent contract, perpetual in its character, that the Andover and Wilmington railroad should forever enter upon and use the road of the Boston and Lowell railroad company. The proprietors of the Andover and Wilmington railroad had the right to enter it upon the Boston and Lowell railroad, paying therefor so long as they used the same. How many trains they would run daily, or whether they would run their trains at all, was, in the absence of all other obligations than what were contained in the charters of the two companies, a matter as to which the Boston and Lowell railroad company could enforce no claim for damages, if, when the Andover and Wilmington company did enter upon the track of the Boston and Lowell railroad, they observed all the regulations required of them. It was rather in the nature of a lease for an indefinite period of time, with liability to pay as long as the road might be used.
Nor can such perpetual obligation or duty, to continue to enter upon the track of the Boston and Lowell railroad, be inferred from any onerous duty imposed by law upon the Boston and Lowell railroad corporation, to make expensive and permanent additions to and enlargement of their establish- ' ment, for the accommodation of the Andover and Wilmington travel. The right of the Andover and Wilmington railroad corporation was to enter upon the Boston and Lowell railroad, as it existed. If the Andover and Wilmington railroad brought an increase of business, it might be for the interest of the Boston and Lowell railroad company to enlarge their establishment; but that was a matter wholly voluntary, made and to be regulated by their own interests.
We are therefore of opinion, that this was a privilege granted to the Andover and Wilmington railroad corporation, and not a contract in the sense assumed by the plaintiffs’ counsel; and that it was competent for the Andover and Wilmington company, under the various subsequent legislative acts, to connect themselves with the extended lines of railroad, and to withdraw from the use of the Boston and Lowell railroad, and omit to enter thereupon.
*385 But it was further urged, on behalf of the plaintiffs, that the defendants have connected themselves with the Boston and Maine extension railroad, and through that connection are diverting travel from the road of the plaintiffs. The connection is admitted,, and the further question is presented, whether this use of that road is a violation of the charter of the Boston and Lowell railroad corporation. It is said to be in violation of the clause, which provides “ that no other railroad shall, within thirty years, be authorized to be made leading from Boston, Charlestown or Cambridge to Lowell, or from Boston, Charlestown, or Cambridge to any place within five miles of the northern termination of the Lowell railroad.
The plaintiffs contend, that this clause for the exclusion of other roads goes to the extent of excluding the defendants from having another road, within the limits which would be included between two diverging straight lines drawn from Boston, or the termination in that direction, to such points, that each would be five miles distant from the northern termination of the Lowell railroad.
We do not coincide in this view of the construction of the clause in question. Such a limitation might have been provided in the charter granted to the Boston and Lowell railroad, and if so it ought certainly to be enforced. Public grants are to be construed with some degree of strictness, and especially where they are in the nature of limitations upon the future exercise of legislative power. It seems to us, that this provision of § 12, in the charter of the Boston and Lowell railroad company, is no more than a restriction, that no other railroad should, within thirty years, be established under a legislative grant, leading from Boston, or the other towns named, to Lowell; nor one leading in the same general direction and terminating within five miles of the northern termination of the Boston and Lowell railroad. It left free the construction of other roads from Boston and the adjacent towns, leading in other directions; and by the limitation as to the five miles, it was intended to prevent any fraudulent evasion of the restriction, by means of another road not actually terminating in Lowell, yet so near it, that it would be a rival road to Lowell. *386 To secure this object, five miles on each side of the termination of the road, at Lowell, was taken as an actual exclusion of other roads ; leaving such roads, however, to be established passing more than five miles distant from the northern termination of the Boston and Lowell roadv The defendants are not, in our opinion, liable to the plaintiffs for participating in the construction and use of the Boston and Maine extension railroad.
Upon the whole matter, the court are of opinion, that this demurrer is well taken, and that judgment must be reí Jered for the defendants upon the questions thereby raised.

 This fact is not stated in the declaration.